MURRAY, Appellant, v. HALDORN, Respondent.

(No. 1,277.)

(Submitted March 1, 1901.   Decided April 8, 1901.)

*Counterclaim—Replication—Appeal—Assignment of Errors—Review.*

1. In a suit on a note, defendant set up as a counterclaim the amount taxed by the court for his legal services on a mortgage foreclosure.   Plaintiff's replication alleged that it had been agreed between them that whenever, on a foreclosure sale, plaintiff purchased the property, defendant should receive one-half of the attorney's fee as taxed by the court, and that the other half should go to the plaintiff; that plaintiff had purchased under the foreclosure in question; and that one-half of the fee allowed had been credited on the note.   *Held,* that it was error to strike that part of plaintiff's replication relative to the agreement, on the ground that it was against public policy, since if the contract was immoral, and had been executed, the plaintiff had a right to show the facts in defense of the counterclaim.

2. Where, on appeal, the plaintiff contended that the evidence did not support the finding as to a sum due defendant, and the objection in the record was made as to a certain finding, which disclosed that the jury in that finding did not undertake in any way to determine the amount due defendant, the appellate court could not review the matter.

*Appeal from District Court, Silver Bow County; John Lindsay, Judge.*

Action by James A. Murray against George Haldorn.   From a judgment in favor of defendant, plaintiff appeals.   Reversed.

*Mr. Charles O'Donnell* and *Mr. E. S. Booth,* for Appellant.

*Messrs. Forbis & Evans,* for Respondent.

MR. JUSTICE MILBURN delivered the opinion of the Court.

This is an appeal from the judgment in favor of the defendant on his counterclaim and from the order denying the motion for a new trial.

Plaintiff sued the defendant on a promissory note made by the latter to order of the plaintiff for the sum of $5,733, on which had been paid $2,000.   Defendant admits all the allega-

tions of the complaint, and sets up 45 counterclaims, all in one count. The jury made certain findings, but rendered no general verdict for the defendant. The court entered judgment against the plaintiff for $5,486.30.

The appellant in his brief relies upon two assignments of error: "First, the court erred in sustaining defendant's motion to strike out portions of the plaintiff's replication; second, the court erred in overruling the defendant's [plaintiff's] two motions as set forth on page 214 of transcript." Waiving the fact that these two assignments, as they appear, are not as perspicuous as they ought to be, we find by examination of the transcript that the first assignment refers to the court's order striking out portions of the replication hereinafter referred to.

Defendant in his counterclaim alleges that "in March, 1894, the defendant performed services for the plaintiff at his request in the case of Murray v. Farlin, and was allowed by the court a fee of $1,500, which was a reasonable fee, none of which has been paid." Plaintiff, referring thereto in his replication, admits "that the defendant performed services for plaintiff in the case of Murray v. Farlin, and that he was allowed by the court a fee of $1,500, but denies that plaintiff was to pay defendant said sum of $1,500 or any or greater sum than is hereinafter set forth. Plaintiff alleges the facts to be that the said plaintiff and the said defendant, prior to the time the suit of Murray v. Farlin was commenced, entered into an agreement wherein it was agreed between plaintiff and defendant that in all cases of foreclosure of mortgages wherein the defendant was employed by plaintiff, and wherein the said plaintiff, or the party interested in the property described in the decree in the cause, purchased the property at sheriff's sale, the said defendant would only receive one-half of the attorney's fee as taxed by the court, and that the other half of the sum so taxed should go to the plaintiff or party interested in the cause; that the property described in the complaint and decree in the case of Murray v. Farlin was purchased for the plaintiff in said cause, and in pursuance of said agreement there would be due the defendant

the sum of $750, which is included in the sum indorsed on the note in plaintiff's complaint, and not other sum whatever." The court on motion struck out all of said paragraph of the replication after the words, "a fee of $1,500," leaving the paragraph to read: . "Plaintiff admits that the defendant performed services for plaintiff in the case of Murray v. Farlin, and that he was allowed by the court a fee of $1,500."

. Defendant in his counterclaim also alleged "that in April, 1895, the defendant performed services for the plaintiff, at his request, in the case of Murray v. Dickerman, which services were reasonably worth $500, which was allowed by the court, none of which has been paid;" and the plaintiff in reference thereto admits "that the defendant performed services for plaintiff in the case of Murray v. Dickerman, and that he was allowed by the court a fee of $500, but denies that plaintiff was to pay the defendant said sum of $500, or any other or greater sum than is hereinafter set forth. Plaintiff alleges the facts to be that the said plaintiff and the said defendant, prior to the time the suit of Murray v. Dickerman was commenced, entered into an agreement, as set forth in paragraph 32 of this answer, and that the same is made a part of this paragraph; that the property described in the complaint and decree in the case of Murray v. Dickerman was purchased for the plaintiff in said cause, and in pursuance of said agreement there would be due to the defendant the sum of $250, which is included in the sums indorsed on the note in plaintiff's complaint in this cause, and no other sum whatever." The court, in granting said motion to strike, struck out all of plaintiff's replication, in relation to the said suit of Murray v. Dickerman, after the words, "hereinafter set forth."

The action of the court in striking these parts of the replication, so complained of as error by the plaintiff, is defended by the respondent herein on the ground that the defense of the plaintiff to the counterclaim, as set up in the parts so stricken out, is "in utter disregard of all ethics," and is "immoral and against public policy," and, being "in violation of all moral

law and principle, cannot have its reward." Without undertaking to pass upon the question whether or not the defense set up by the plaintiff to the said counterclaims is immoral, it is manifest that the court erred in striking out these portions of the replication. If the alleged contract set up in the parts stricken out was void because immoral, then it was void as to all parties, including Mr. Haldorn, the defendant herein. If the contract was immoral, and had been executed, the plaintiff had a right in his replication, in defense of the counterclaim, so to allege; the complaint and the answer tending to confirm the stricken parts of the replication in the statement that $750 plus $250—$1,000—had been credited on said note before suit. If the agreement was not immoral, he certainly had a right to set up the defense which he did. In any way that the matter may be considered, he had the right to tell the facts to the court and jury. To strike out his defense was error, and for this reason the judgment must be reversed.

Examination of the record discloses that this Court cannot, in justice, reverse the case, with an option to the defendant to remit the amount which, through the error of the court in granting the motion to strike the parts of the replication, has been erroneously included in the judgment. We discover by such examination that the defendant in his counterclaim demanded $1,000 for alleged services rendered plaintiff in "assisting him in procuring from the lessees of the Estella mine the royalty on the output thereof." The testimony of the defendant in respect of said demand for $1,000 is as follows: "The next claim is No. 10, where I allege that prior to August, 1892, the defendant, at the special instance and request of the plaintiff, performed services for the plaintiff in assisting him in procuring from the lessees of the Estella mine the royalty on the output thereof, and for which I charged one thousand dollars. At that time Mr. Murray and I had become very intimate friends; too intimate, in fact. One Saturday night he was at my house, and he asked me if I would come down to his office the following day (Sunday), at 11 o'clock. He had

leased the Estella mine, which he then owned, to five Cornishmen, and he said that he had done it without any royalty being put in the contract. I think it was a verbal lease or contract, and he said that he thought if it was worked properly he could get royalty from it without any trouble. They were then shipping a great deal of very rich ore, and he told me what he wanted me to do. He wanted me to come down the next day about 11 o'clock to the side door of the bank, and he would have these Cornish boys in there, and I was to come in very hurriedly, and in an abrupt manner say, 'Well, it has got to be settled today, because I won't wait any longer.' He didn't tell me what the purpose was, but I surmised what it was, and I did it. I found the gentlemen all there. I don't know what was the result of the interview after I had gone in, but I know in a short time after that Mr. Murray and myself were going to Alaska together, and on the steamer "Queen" he showed me a bundle of checks that he said represented eighteen or twenty thousand dollars, and that that was the royalty that he had gotten from the Cornishmen out of the way he worked it on that Sunday morning. I think that Mr. Daniels, of the Summit, was one of the parties. That is all I did, and I am not a bit proud of it; but at the same time I did it, and I think I am entitled to some compensation for it. That was all I was to say; just to make that play for him that other parties wanted the property; and it was simply a bold 'bluff,'—a play to 'bluff' these men out of the royalty. I think that that kind of work should be pretty well paid for. I charged him one thousand dollars, but it remains a charge though. It never has been paid. It remains unpaid, the same as all of the other charges against him." We regret that the exception taken to the action of the court and jury in respect of this $1,000 claim is not before us in such a way that we can make any decision thereon. The specification of error in respect thereof is merely that the testimony is insufficient to support the jury's finding, giving as a reason therefor that the plaintiff had testified that the alleged services were of such a character that the defendant had not

intended to charge for the same, and the further reason that plaintiff's witness Hamilton had sworn that such services were only reasonably worth $50, the objection being made to the finding numbered 7. Inspection of this finding, as shown in the transcript, discloses that the jury in that finding did not undertake in any wise to fix the value of said alleged services. Therefore there is nothing before this Court, in proper form, in the way of an objection to the certain other finding of the jury adopted by the court in its judgment, to the effect that said alleged services were worth $1,000.

Counsel for respondent having characterized the alleged contract between plaintiff and defendant as set up in the parts of the replication stricken out as in "violation of all moral law and principle," we cannot refrain from suggesting that the district court, upon a retrial of this cause, take into consideration the question whether it, contemplating "all moral law and principle," should permit the recovery of $1,000, or any other sum, for the performance of such an act of "bluff," as shown in the testimony of the defendant, wherein he, at least, had the grace to say, "I am not a bit proud of it, but at the same time I did it;" his act being, as defendant testified, "simply a bold 'bluff,'—a play to 'bluff' these men out of the royalty."

We do not decide the other matters suggested by the appellant, as they are not presented in the brief in proper form.

*Reversed and remanded.*

---

## ON MOTION FOR RE-HEARING.

(Submitted May 3, 1901. Decided May 13, 1901.)

MR. JUSTICE MILBURN delivered the opinion of the Court.

The respondent's counsel prays for a re-hearing and for ground of the prayer says that this Court in its opinion held

that, regardless of the question of morals involved, the allega-
tions of the replication, stricken out by the lower court, should
be by it heard and determined. Counsel states that this ques-
tion was not raised in the briefs or argument upon final·hearing,
that the only question raised and argued was whether or not
the alleged contract for compensation was against public policy,
and that "the effect of the contract upon the right of the defend-
ant to recover upon a *quantum meruit*    *    *    *    was not .dis-
cussed, and this matter has never been presented in a formal
way to this Court." Respondent's counsel in his brief; speak-
ing of the alleged error of the district court in striking out the
certain parts of the replication, uses this language: "Strangely
enough, and as if in the best of faith, the plaintiff in his repli-
cation admits that the fee was allowed by the court upon the
foreclosure of the mortgages, but although the plaintiff has had
the advantage of the allowance, he comes forth to assert that
the fee so allowed was in excess of the reasonable value of the
services." Counsel seems to be in error as to whether or not
the question of *quantum meruit* was raised or considered in the
briefs.

We did not overlook the difference between a contract to do
an immoral act and a contract to do a legal act, the agreement
as to the consideration being void and leaving the creditor to
recover on a *quantum meruit*.

The admission of the plaintiff in his replication as to the
allowance by the court and the reasonable value of the services
rendered was not made by the plaintiff, but was the result of
the court's action on motion to strike out the language of the
replication. It is hardly permissible for a party to move the
court to strike out part of a sentence or paragraph and then
charge the pleader with meaning to say what the part remain-
ing in the pleading declares, whereas the remainder of the
sentence or paragraph depends for its real meaning and intend-
ment upon the part stricken out.

The effect of the striking out of the parts of the replication
as to the $1,500 matter was to make the plaintiff confess the

cause of action in the sum of $1,500 on a *quantum meruit*. Practically the same remarks apply to the action of the court in striking out the parts of the replication referring to the other counterclaim for $500.

The effect of the pleading, as to the matters, before striking out was, it is true, to admit the services as having been rendered, but also to set up circumstances from which the court and jury might determine that the agreement as to the compensation was immoral and that $750 and $250, respectively, had been actually paid therefor, or that the services were worth only $750 and $250, respectively, which sums had been severally paid.

The parts stricken out included, in effect, the declaration that $1,000 had been paid to the defendant in full for the said services, and that this was part of the $2,000 which defendant admitted had been paid on the note. This, certainly, plaintiff had the right to allege whether the counterclaim was on a *quantum meruit* or express contract. It was not intended that anything in the opinion should be construed to mean that, if the services were legally rendered, they should not be recompensed in a reasonable sum if the agreement to pay a fixed compensation was void, but if the alleged contract to pay a fixed sum was immoral and had been executed as claimed, the plaintiff had a right to so allege and prove.

The statement contained in the said opinion that the plaintiff had the right to tell the facts to the court and jury in any way that the matter of the said contract for professional services might be considered, is withdrawn, as meaning more than the Court intended to say.

The motion for re-hearing is denied.

*Motion denied.*